68 F.3d 459
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re BULLDOG TRUCKING, INCORPORATED, formerly known as
Bulldog Trucking of Georgia, Incorporated, a
Delaware Corporation, Debtor.
Langdon M. COOPER, Trustee for Bulldog Trucking,
Incorporated, Plaintiff-Appellee,
v.
SHAW'S EXPRESS, INCORPORATED; B & L, Incorporated;
Agrolinz, Incorporated; Central Farm Supply, Incorporated;
Delta and Pine Land Company; J.C. Penney Company,
Incorporated; Levelland Compress Company, Incorporated;
N.L. Daughtry Fertilizer Company; Terra International,
Incorporated; Tifton Aluminum Processing, Incorporated;
Waverly Textile Processing, Incorporated; Canaan Brokerage,
Incorporated; Meredith Transport, Incorporated,
Defendants-Appellants.
In re BULLDOG TRUCKING, INCORPORATED, formerly known as
Bulldog Trucking of Georgia, Incorporated, a
Delaware Corporation, Debtor.
Langdon M. COOPER, Trustee for Bulldog Trucking,
Incorporated, Plaintiff-Appellee,
v.
SHAW'S EXPRESS, INCORPORATED; B & L, Incorporated;
Agrolinz, Incorporated; Central Farm Supply, Incorporated;
Delta and Pine Land Company; J.C. Penney Company,
Incorporated; Levelland Compress Company, Incorporated;
N.L. Daughtry Fertilizer Company; Terra International,
Incorporated; Tifton Aluminum Processing, Incorporated;
Waverly Textile Processing, Incorporated; Canaan Brokerage,
Incorporated; Meredith Transport, Incorporated, Defendants,
and
Paul H. LAMBOLEY, Appellant.
In re BULLDOG TRUCKING, INCORPORATED, formerly known as
Bulldog Trucking of Georgia, Incorporated, a
Delaware Corporation, Debtor.
Langdon M. COOPER, Trustee for Bulldog Trucking,
Incorporated, Plaintiff-Appellee,
v.
AMERICAN MANUFACTURING MUTUAL, Defendant-Appellant,
and
MEREDITH TRANSPORT, INCORPORATED; Paul H. LAMBOLEY, Defendants.
 Nos. 94-1936, 94-1975, 94-2104.
 United States Court of Appeals, Fourth Circuit.
 Oct. 19, 1995.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Senior District Judge. (CA-93-404-3-P, CA-93-405-3-P, CA-93-406-3-P, CA-93-407-3-P, BK-90-31936-C-B, BK-92-3334, BK-92-3515, BK-92-3107).
 ARGUED: Paul H. Lamboley, GROVE, JASKIEWICZ, GILLIAM & COBERT, Washington, D.C., for Appellants. Joseph L. Steinfeld, Jr., SHAWN, MANN & NIEDERMAYER, L.L.P., Washington, D.C., for Appellee. ON BRIEF: Langdon M. Cooper, ALALA, MULLEN, HOLLAND & COOPER, P.A., Gastonia, North Carolina, for Appellee.
 Before WIDENER and MURNAGHAN, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Shaw's Express, Inc., B & L, Inc., Canaan Brokerage, Inc., and Meredith Transport, Inc., and their attorney, Paul H. Lamboley (collectively, "Appellants"), appeal the district court's affirmance of the bankruptcy court orders sanctioning them in the amount of $4,000 collectively. Because we find the imposition of sanctions justified due to the Appellants' violation of the automatic stay provision of the Bankruptcy Code, we affirm.
 
 I.
 
 2
 The instant case arose from the bankruptcy of Bulldog Trucking, Inc. ("Bulldog"), an interstate motor carrier. Bulldog filed for Chapter 11 relief in bankruptcy on December 11, 1990 in the United States Bankruptcy Court for the Western District of North Carolina; the petition was converted to a Chapter 7 liquidation on February 14, 1991. Langdon M. Cooper, as the Trustee for Bulldog, commenced adversary proceedings against Shaw's Express, B & L, Canaan Brokerage, and Meredith Transport, companies which are licensed by the Interstate Commerce Commission ("ICC") to arrange interstate transportation services for shippers and motor carriers. The proceedings instituted by the Trustee were actions to recover freight undercharges stemming from transportation services provided to the Appellants and its shipper customers by Bulldog. The Appellants answered the Trustee's claim for undercharges, asserting several defenses and counterclaims.
 
 
 3
 The Trustee then moved for summary judgment in each of the four cases. On June 9, 1993, the bankruptcy court granted summary judgment to the Trustee on most of his claims, but directed that judgment not be entered in any of the cases, in order to allow the Appellants the opportunity to seek an ICC determination of the reasonableness of the transportation rates filed by Bulldog with the ICC, pursuant to Reiter v. Cooper, 113 S.Ct. 1213 (1993). In each of its orders, the bankruptcy court stated:
 
 
 4
 The parties are cautioned that this Court has retained jurisdiction of this adversary proceeding and the plaintiff's claims and the defendant's defenses. This Court has not "referred" and is not "referring" this case to the ICC. This Court has merely stayed its proceedings for the limited purpose of allowing the defendant to request that the ICC: (i) determine whether the published tariff rates found by this Court to be applicable for defendant's freight are reasonable, and (ii) if the ICC determines they are not reasonable, to determine what are the reasonable rates and then to award reparations to the defendant in the amount of the difference between the aggregate amount of the tariff rates found by this Court to be owed by the defendant and the aggregate amount of the reasonable rates for the shipments.
 
 
 5
 The bankruptcy court allowed the Appellants a certain amount of time in which to file their rate reasonableness counterclaims with the ICC. The court stated that if the Appellants timely filed the administrative complaints, the court would not certify final judgment or lift its stay of enforcement for twelve months. However, the bankruptcy judge also said, "[T]his Court will consider taking earlier action if the plaintiff after notice to the defendant and a hearing presents the Court with evidence that there is no longer just cause for delay of the entry of a final judgment and stay of enforcement." On July 9, 1993, the Appellants filed petitions with the ICC seeking declaratory relief from the undercharge claims asserted by the Trustee. In their petitions, the Appellants asked the ICC to declare that the transportation provided by Bulldog constituted contract carriage rather than common carriage under the Interstate Commerce Act, 49 U.S.C. Secs. 10101-11917, and to declare that Bulldog may therefore not recover common carrier rates from the Appellants. In addition, the petitions stated, "In the event contract carriage is not declared, [Appellants] then request[ ] that the ICC examine and enter appropriate declaratory order(s) regarding broker commissions in rate base, tariff application/interpretation, rate reasonableness, and other relevant filed-rate doctrine and undercharge issues arising out of [Appellant]/Bulldog transaction(s) under a common carriage determination." Finally, each petition requested the ICC to "open proceedings to investigate all issues within its original and primary jurisdiction...." The Appellants also asked for an award of attorneys' fees.
 
 
 6
 On July 12, 1993, the Trustee sent the Appellants a letter regarding the petitions filed before the ICC, stating that he believed the Appellants had violated the Sec. 362 bankruptcy stay,[1] as well as the orders of the bankruptcy court that limited the issues to be referred to the ICC. The letter further warned that if amended petitions were not filed by July 16, the Trustee would pursue the matter in court. On July 22, 1993, the Trustee asked the bankruptcy court for the immediate entry and certification of final judgment on the grounds that the Appellants had violated the Sec. 362 stay and the court's orders, and requested an award of attorneys' fees under 11 U.S.C. Sec. 362(h).
 
 
 7
 On August 9, 1993, the Appellants filed amended petitions before the ICC. A hearing was subsequently held regarding the Trustee's request for the entry of judgment, at which the bankruptcy court orally granted the Trustee's motion for entry of judgment, and sanctioned the Appellants and their counsel for their actions before the ICC. On October 27, 1993, the bankruptcy court issued written orders sanctioning the Appellants and their counsel and ordering the payment of $1,000 in each of the four cases ($500 to be paid to the Trustee in bankruptcy and $500 to his counsel), for a total of $4,000.[2] The bankruptcy court denied the Appellants' motion to reconsider its order.
 
 
 8
 On appeal to the district court, the bankruptcy court's orders were affirmed. The Appellants and their counsel now appeal the question of the imposition of sanctions to us.
 
 II.
 
 9
 In its order imposing sanctions, the bankruptcy court stated:
 
 
 10
 This Court concludes that by filing the Petition[with the ICC] the Defendant and its counsel of record have completely, willfully and intentionally violated this Court's Order of June 9th, and they have violated Section 362 of the Bankruptcy Code. The Defendant has taken no action to truly amend or to withdraw its Petition before the ICC. The Defendant and its counsel of record should be sanctioned for this clear contempt of Court and violation of the stay and Order of this Court.
 
 
 11
 On appeal, the district court found no error in the bankruptcy judge's findings of fact or law, and stated, "In sum, the Court affirms the Bankruptcy Court's October 27, 1993 order in its entirety." We review the district court's decision de novo on appeal. See In re Robb, 23 F.3d 895, 898 n. 1 (4th Cir.1994); In re Bryson Properties, XVIII, 961 F.2d 496, 499 (4th Cir.), cert. denied, 113 S.Ct. 191 (1992); In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d 1503, 1505 (9th Cir.1987). We review the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error. In re Bryson, 961 F.2d at 499; In re Camino Contractors, 818 F.2d at 1505.
 
 
 12
 Section 362 of the Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay of:
 
 
 13
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...
 
 
 14
 ....
 
 
 15
 (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor....
 
 
 16
 11 U.S.C. Sec. 362(a). Section 362(h) further provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."
 
 
 17
 We find it clear that the Appellants willfully violated the Sec. 362 stay in the instant case. It is not necessary to a finding of a willful violation of the bankruptcy stay that the Appellants intended to violate Sec. 362 by bringing their claims to the ICC. The Third and Ninth Circuits have adopted the following definition of "willful" under 11 U.S.C. Sec. 362(h):
 
 
 18
 A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.
 
 
 19
 In re Atlantic Business & Community Corp., 901 F.2d 325, 329 (3d Cir.1990); In re Bloom, 875 F.2d 224, 227 (9th Cir.1989); see also Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292-93 (4th Cir.1986) ("[W]e conclude that[Sec. 362(h) ] sanctions were properly assessed against Budget Services for a willful violation of the automatic stay. There is ample evidence in the record to support the conclusion that Budget Services knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it."). The Appellants clearly knew of the existence of the stay, and knew that the bankruptcy court had modified the stay only for the limited purpose of allowing them to take their rate reasonableness claims to the ICC. Despite that knowledge, the Appellants went to the ICC to ask for rulings not only on rate reasonableness, but also on the nature of the carriage service provided by Bulldog, broker commissions, tariff interpretation, and other rate and undercharge issues.
 
 
 20
 The Appellants attempt to argue that the claims they brought before the ICC were in the nature of recoupment claims, see Reiter v. Cooper, 113 S.Ct. 1213, 1218 (1993) (shipper's counterclaim alleging that filed rates were unreasonable is a "recoupment" claim), and that they did not believe they were violating the bankruptcy stay by bringing those claims before the ICC, because the automatic stay provision applies only to setoffs and not to recoupment claims, see 11 U.S.C. Sec. 362(a)(7) (automatic stay applies to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor ...."); see also Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir.1984) (explaining the distinction between setoff and recoupment claims). We find the Appellants' justification for their conduct unconvincing. Although the Appellants cite some support for the proposition that their rate reasonableness claims were not subject to the bankruptcy stay, a point which we do not decide, their argument misses the mark, because the Appellants were not sanctioned for taking the rate reasonableness claims to the ICC. In fact, the bankruptcy court in the instant case expressly allowed the Appellants to take their rate reasonableness claims to the ICC. The Appellants violated the Sec. 362 stay by taking claims other than those involving rate reasonableness to the ICC, and we reject the Appellants attempt to convince us that those other claims were somehow part and parcel of the rate reasonableness claims and were therefore also not subject to the stay. It was crystal clear from the order of the bankruptcy court that only the specific issue of rate reasonableness was to be brought before the ICC.
 
 
 21
 The Appellants also argue that the circumstances surrounding the filing and subsequent amendment of their petitions before the ICC should prevent a finding that they violated the Sec. 362 stay. The Appellants' argument centers primarily on correspondence that was exchanged between the Trustee and the Appellants' counsel after the filing of the ICC petition. When the Trustee notified the Appellants that he believed their petition before the ICC violated the Sec. 362 stay, the Appellants wrote back, stating that they would not be able to respond to the Trustee's objections by July 16, the deadline set by the Trustee for the filing of an amended petition. When the Appellants later spoke with the Trustee, they maintained that their petitions before the ICC were proper, because the bankruptcy court did not have jurisdiction directly to decide the substantive issues that it had purported to decide in its June 9, 1993 order. Nevertheless, the Appellants agreed to amend their ICC petitions, at the same time asserting that they would not waive their arguments concerning the nature of carriage issue.
 
 
 22
 The Appellants claim that they should not be sanctioned, because they complied with the Trustee's request to amend their petitions before the ICC. The bankruptcy court, however, found that the amended petition filed by the Appellants did not differ in essence from the petition that they had originally filed with the ICC.
 
 
 23
 We, too, reject the Appellant's argument. First, the Appellants admit that their petitions to the ICC were in part based on a belief that the bankruptcy court had exceeded its jurisdiction in its June 9 order. In other words, the Appellants apparently knew that they might be violating Sec. 362, but felt that they were justified in doing so. Even if the bankruptcy court had exceeded its jurisdiction, the Appellants' remedy was not simply to ignore the orders of the bankruptcy court. The bankruptcy court's finding of a Sec. 362 violation is justified both on the basis of the Appellants' amended petition, which the court found did not differ significantly from the original petition, and based on the original petition itself. As the district court stated, "It is not enough for officers of the Court to escape sanction to merely argue they removed their hand from the cookie jar once they were caught red handed."[3] We affirm the bankruptcy court's order sanctioning the Appellants for violation of the Sec. 362 bankruptcy stay. There is clear evidence that the Appellants filed their petitions before the ICC, knowing that the bankruptcy stay was in effect. Having found that the bankruptcy court did not err in sanctioning the Appellants under Sec. 362, we find it unnecessary to address whether the court properly sanctioned the Appellants under Bankruptcy Rule 9020. See Budget Service, 804 F.2d at 293 (finding that sanctions were properly imposed under Sec. 362(h), and stating that "[t]he fact that the bankruptcy court held Budget Services in civil contempt is nothing more than surplusage, and we treat it as such.").[4]
 
 III.
 
 24
 The Appellants also challenge the amount of the sanctions. Section 362 permits an award of both actual damages, including costs and attorneys' fees, and punitive damages. See 11 U.S.C. Sec. 362(h). The bankruptcy court stated at the sanctions hearing that it intended to award damages against the Appellants "as attorney's fees ... and as a sanction for their misconduct." The district court found the amount of the sanctions, $1,000 per case, to be proportional to the billable time that was spent by the Trustee to deal with the Appellants' behavior before the ICC.
 
 
 25
 We agree with the district court that the amount awarded by the bankruptcy court is by no means unreasonable for the time spent by the Trustee and his attorney in preventing the Appellants from violating the bankruptcy stay. We therefore affirm the amount of the sanctions imposed by the bankruptcy court.
 
 IV.
 
 26
 The judgment of the district court, affirming the bankruptcy court's imposition of sanctions, is accordingly
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362, operates to stay the commencement or continuation of certain actions against the debtor once a petition in bankruptcy has been filed. It may be lifted by the bankruptcy court in order to allow the parties to pursue actions outside of the bankruptcy proceedings. See 11 U.S.C. Sec. 362(d)
 
 
 [2]
 The previously issued oral orders of the bankruptcy court had sanctioned the Appellants to a total amount of $8,000
 
 
 [3]
 We note that the fact that the Trustee allegedly did not seek sanctions against other parties in the bankruptcy proceedings who also petitioned the ICC is not relevant to our resolution of the instant case
 
 
 [4]
 In our de novo review of the district court, we are not bound by the legal basis provided by that court in its opinion affirming the imposition of sanctions. See, e.g., Budget Service, 804 F.2d at 290